Daniel Prieto, State Bar No. 24048744
dan.prieto@dlapiper.com
DLA Piper LLP (US)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Tel: (214) 743-4500
Fax: (214) 743-4545


*Counsel for the Debtors*

Thomas R. Califano (admitted *pro hac vice*)
thomas.califano@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 335-4500
Fax: (212) 335-4501

Daniel M. Simon (admitted *pro hac vice*)
daniel.simon@dlapiper.com
David Avraham (admitted *pro hac vice*)
david.avraham@dlapiper.com
Tara Nair (admitted *pro hac vice*)
tara.nair@dlapiper.com
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Tel: (312) 368-4000
Fax: (312) 236-7516

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| PHI, Inc., *et al.*,[1] | § | Case No. 19-30923-hdh11 |
| | § | |
| Debtors. | § | (Jointly Administered) |

## EMERGENCY MOTION OF THE DEBTORS FOR INTERIM AND FINAL ORDERS AUTHORIZING THE USE OF CASH COLLATERAL AND GRANTING RELATED RELIEF

**THE DEBTORS SEEK EMERGENCY CONSIDERATION OF THIS MOTION. IF THIS RELIEF IS GRANTED, A HEARING WILL BE HELD ON THIS MATTER ON MAY 13, 2019 AT 10:00 A.M. (CDT) AT THE UNITED STATES BANKRUPTCY COURT, EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE ST., 14TH FLOOR, COURTROOM #3, DALLAS, TX 75242-1496.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PHI, Inc. (5707), PHI Air Medical, L.L.C. (4705), AM Equity Holdings, L.L.C. (0730), PHI Tech Services, Inc. (5089) and PHI Helipass, L.L.C. (4187). The corporate headquarters and the mailing address for the Debtors listed above is 2001 SE Evangeline Thruway, Lafayette, Louisiana 70508.

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

The above-captioned debtors (collectively, the "Debtors"), by and through their counsel, DLA Piper LLP (US), hereby submit this motion (the "Motion") for entry of interim and final orders, pursuant to sections 105, 361, 362, 363, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"):  (i) authorizing the Debtors to use "cash collateral" as such term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), on the terms and conditions contained therein; (ii) granting adequate protection to the Prepetition Secured Parties (as defined herein); and (iii) granting certain related relief.  In support of this Motion, the Debtors incorporate the statements contained in the *Declaration of Robert A. Del Genio, Chief Restructuring Officer of PHI, Inc. in Support of First Day Pleadings* [Docket No. 16]  (the "First Day Declaration"), and further respectfully state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over these cases, the Debtors, the property of the Debtors' estates and this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).

2.      Venue of these cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105, 361, 362, 363, and 507 of the Bankruptcy Code and Bankruptcy Rule 4001.

## BACKGROUND

4.      On March 14, 2019 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      On March 25, 2019, the Office of the United States Trustee for the Northern District of Texas (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee") under section 1102(a)(1) of the Bankruptcy Code [Docket No. 129].  On April 25, 2019, the U.S. Trustee appointed the official committee of equity security holders (the "Equity Committee") in these chapter 11 cases [Docket No. 345].  No trustee or examiner has been appointed in the Debtors' chapter 11 cases.

## FACTS RELEVANT TO RELIEF REQUESTED

### A.    Overview of the Debtors' Businesses

6.      The Debtors and the non-debtor subsidiaries of PHI, Inc. (collectively, "PHI") are a publicly held global helicopter services company and a leading provider of safe and reliable helicopter transportation services.  PHI operates primarily through two business segments:  (a) Oil and Gas ("O&G"), which facilitates crew change operations for offshore oil companies in the Gulf of Mexico, Australia, and other international locations, as well as helicopter repair, maintenance and overhaul services for customer-owned aircraft; and (b) Air Medical ("Air Medical"), which provides air medical transportation and related services for hospitals and emergency service agencies throughout the continental United States.   A third, minor business segment is dedicated to technical services ("Technical Services"), involving helicopter repair and overhaul services for flight operations customers, as well as the operation of six aircraft for the National Science Foundation in Antarctica.  Additional factual information regarding the Debtors is set forth in the First Day Declaration.

**B.**     **The Debtors' Prepetition Funded Debt**

7.     As of the Petition Date, the Debtors' debt obligations included (a) $200 million of prepetition secured obligations under the Prepetition Working Capital Loan Agreement and the Blue Torch Facility (as such terms are defined below) (together, the "Prepetition Secured Debt Obligations") and (b) $500 million of the Prepetition Note Obligations under the Prepetition Indenture (as such terms are defined below) (together with the Prepetition Secured Debt Obligations, the "Prepetition Debt Obligations").

### 1.     The Prepetition Working Capital Loan

8.     On September 18, 2013, PHI, Inc., as borrower, and certain subsidiary guarantors, entered into that certain second amended and restated loan agreement, under which Whitney Bank, as lender, agreed to provide PHI, Inc. with a secured revolving line of credit in the aggregate principal amount of $150 million (the "Whitney Loan"). Following several maturity date extensions and amendments to the loan agreement, the Company sought and successfully secured refinancing of the Whitney Loan.

9.     Specifically, on September 28, 2018, PHI, Inc., as borrower, entered into that certain loan agreement (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition Working Capital Loan Agreement") with Thirty Two, L.L.C.,[2] as lender (the "Prepetition Working Capital Secured Lender" or "Thirty Two"), pursuant to which the Prepetition Working Capital Secured Lender made a term loan in the aggregate principal amount of $130 million, the proceeds of which refinanced the Whitney Loan in full. PHI, Inc.'s obligations under the Prepetition Working Capital Loan Agreement and all agreements and documents delivered

---

[2]     As noted in the First Day Declaration, the Prepetition Working Capital Secured Lender is an affiliate of the Debtors' chief executive officer, Mr. Al A. Gonsoulin, who is the beneficial owner of more than 70% of the outstanding voting power of PHI, Inc.'s capital stock. Mr. Gonsoulin serves as the Prepetition Working Capital Secured Lender's managing member.

pursuant thereto or in connection therewith, including, but not limited to, any and all collateral and security documents (each as amended, restated, supplemented or otherwise modified, the "Prepetition Working Capital Loan Documents") are guaranteed by Debtors PHI Air Medical, L.L.C. and PHI Tech, Inc. (the "Prepetition Working Capital Guarantors").

10.     The Prepetition Working Capital Secured Loan bears interest at a rate of 6% per annum, with quarterly payment dates of March 31, June 30, September 30 and December 31. As security for payment and performance of the obligations under the Prepetition Working Capital Loan Documents, PHI, Inc. and the Prepetition Working Capital Guarantors provided to the Prepetition Working Capital Secured Lender (as they had provided to Whitney Bank) a first-priority lien and security interest in all of PHI, Inc.'s and the Prepetition Working Capital Guarantors' Inventory, Spare Parts and all Accounts (each as defined in the Prepetition Working Capital Loan Agreement). In connection with the Debtors' Aircraft Loan Agreement with Blue Torch, the Prepetition Working Capital Secured Lender agreed to subordinate its first lien on the spare parts associated with the approximately 90 O&G aircraft pledged to Blue Torch (as defined below), in exchange for a second lien in certain of such pledged aircraft but only to the extent of the diminution in value of its subordinated lien on the spare parts. The Prepetition Working Capital Secured Loan matures on September 21, 2020.

11.     As of the Petition Date, PHI, Inc. and the Prepetition Working Capital Guarantors were each jointly and severally indebted and liable to the Prepetition Working Capital Secured Lender in respect of the Prepetition Working Capital Loan Documents in the amount of $130,000,000, plus accrued and unpaid interest as of the Petition Date.

### 2.     The Blue Torch Facility

12.     On March 13, 2019, PHI, Inc., as borrower and the other Debtors, as guarantors entered into that certain Loan Agreement (as amended, restated, supplemented or otherwise

modified from time to time, the "Aircraft Loan Agreement" and, together with all agreements and documents delivered pursuant thereto or in connection therewith, including, but not limited to, any and all collateral and security documents, each as amended, restated, supplemented or otherwise modified, the "Blue Torch Loan Documents" and, together with the Prepetition Working Capital Loan Documents, the "Prepetition Secured Debt Documents"), with Blue Torch Capital LP ("Blue Torch"), as agent and the lenders party thereto (collectively, the "Aircraft Lenders" and, together with Blue Torch and the Prepetition Working Capital Secured Lender, the "Prepetition Secured Parties"), pursuant to which the Aircraft Lenders provided a term loan to the Debtors in the aggregate amount of $70 million.

13. The Debtors' obligations under the Blue Torch Loan Documents are secured by a collateral package, consisting primarily of a first lien on approximately 90 O&G aircraft that are registered and located in the U.S., Antarctica, Australia and Canada, and owned by PHI, Inc., as well as the spare parts associated therewith, and a second lien on certain working capital assets pledged to the Prepetition Working Capital Secured Lender. Pursuant to that certain intercreditor agreement by and between Blue Torch and the Prepetition Working Capital Secured Lender (the "Intercreditor Agreement") entered into in connection with the financing, the Prepetition Working Capital Secured Lender agreed to subordinate its first lien on the relevant spare parts, in exchange for a second lien on the approximately 90 O&G aircraft pledged to Blue Torch to the extent of the diminution in value of its subordinated lien on the spare parts. Blue Torch was also granted a second lien on PHI, Inc.'s working capital assets, junior to the interests of the Prepetition Working Capital Secured Lender, in exchange for a second lien to the Prepetition Working Capital Secured Lender on Blue Torch's collateral as described above.

14.    As of the Petition Date, each of the Debtors were jointly and severally indebted and liable to the Aircraft Lenders in respect of the Blue Torch Loan Documents in the amount of $70,000,000, plus accrued and unpaid interest as of the Petition Date.

### 3.    The Prepetition Unsecured Note Obligations

15.    Under that certain indenture dated as of March 17, 2014, by and among Debtor PHI, Inc., as issuer, and certain of PHI, Inc.'s domestic subsidiaries, as guarantors (the "Note Guarantors"), and U.S. Bank National Association, as trustee (the "Trustee"),[3] PHI, Inc. issued 5.25% Senior Notes (the "Notes"), on an unsecured basis, in the aggregate principal amount of $500 million, in favor of certain registered holders.  The Notes are unconditionally guaranteed on a joint and several and senior basis by each of the Note Guarantors.  Interest payments are due under the Notes semi-annually on March 15 and September 15.  On March 15, 2019, the Notes matured and the principal balance of the Notes in the amount of $500 million became due and payable.

### C.    The Debtors' Urgent Need For Use of Cash Collateral

16.    On and after the Petition Date, the Debtors have had access to the cash proceeds advanced by Blue Torch, all of which are unencumbered.  Since the Petition Date, the Debtors have used the funds advanced by Blue Torch under the terms of the Blue Torch Loan Documents—which funds are not Cash Collateral—to fund the Debtors' business operations and the administration of these cases in the ordinary course.  Since the Petition Date, the Debtors have been segregating the Debtors' operating revenues collected post-petition, which related to accounts receivable generated prior to the Petition Date, and which comprises the Prepetition Secured

---

[3]    Pursuant to that certain Instrument of Resignation, Appointment and Acceptance, dated as of February 28, 2019, U.S. Bank National Association resigned as Trustee and Delaware Trust Company was appointed as Successor Trustee.

Parties' Cash Collateral. As of the date hereof, the Debtors have approximately $72 million in Cash Collateral.

17. The Debtors lack the liquidity necessary to fund ongoing operations solely from the Blue Torch loan proceeds. Accordingly, it is essential that the Debtors obtain authority to use Cash Collateral, which is encumbered by the liens granted in connection with the Prepetition Secured Debt Documents. The Debtors need use of Cash Collateral to, among other things, continue normal business operations, including to fund their working capital needs and satisfy their payroll obligations, and pay for the costs of administration of these chapter 11 cases.

18. The Debtors have negotiated the terms of an interim Cash Collateral order that is acceptable to the Prepetition Secured Parties.[4] In addition, prior to filing this Motion, the Debtors elicited and received input from the Creditors' Committee on the terms of the proposed interim Cash Collateral order and engaged in extensive discussions with the Creditors' Committee and the Prepetition Secured Parties regarding certain issues raised by the Creditors' Committee. Counsel to the Creditors' Committee has represented that the terms of the proposed interim order are acceptable to the Creditors' Committee.

19. Without access to Cash Collateral, the Debtors will be unable to pay certain post-petition costs and expenses, including certain expenses necessary to operate their businesses and to administer these chapter 11 cases. Accordingly, the Debtors respectfully submit that the Court should authorize the use of Cash Collateral on the terms and conditions set forth herein.

---

[4] A concise statement of the material terms of the proposed cash collateral orders is contained in paragraph 20, below. A copy of the Attorney Checklist Concerning Motion and Order Pertaining to Use of Cash Collateral is attached as **Exhibit B**.

## PROPOSED TERMS OF THE INTERIM CASH COLLATERAL ORDER

20.    The principal terms of the proposed interim order are summarized below:[5]

    i.    Term. Pursuant to the terms and conditions of the interim cash collateral order, the Debtors are authorized to use Cash Collateral up to an aggregate amount of $30 million from the date of entry of the interim order through and including the earlier of (i) June 21, 2019 and (ii) the date that is 14 days after the Termination Date. (Proposed Order, ¶ 2.)

    ii.    Purposes for Use of Cash Collateral. In accordance with the terms and conditions set forth in the interim order, the Debtors are authorized to use Cash Collateral for (a) general corporate purposes, (b) capital expenditures, (c) payment of costs of administration of these chapter 11 cases, and (d) payment of the costs and expenses of the Prepetition Working Capital Secured Lender and Blue Torch in connection with these chapter 11 cases. (Id.)

    iii.    Adequate Protection. The adequate protection provided to the Prepetition Secured Parties includes:

        a.    Prepetition Working Capital Secured Lender Adequate Protection Liens. Adequate Protection Liens for and to the extent of any decrease in the value of the Prepetition Working Capital Lender's interest in its Prepetition Collateral (including Cash Collateral) that would result from any use, sale, or lease of the Prepetition Collateral (including Cash Collateral) absent such a grant of the Prepetition Working Capital Secured Lender Adequate Protection Liens, subject only to the Carve Out, consisting of continuing, valid, binding, enforceable, non-avoidable and automatically properly perfected replacement liens and security interests in Accounts acquired or generated from and after the Petition Date and all proceeds, products, offspring or profits of such Accounts. (Id. ¶ 4.a.i.)

        b.    Blue Torch Adequate Protection Liens. Adequate Protection Liens for and to the extent of any decrease in the value of the Aircraft Lenders' (including Blue Torch's) interest in their Prepetition Collateral (including Cash Collateral) that would result from any use, sale, or lease of the Prepetition Collateral (including Cash Collateral) absent such a grant of the Adequate Protection Liens to Blue Torch, subject only to the Carve Out, consisting of (i) first priority, continuing, valid, binding, enforceable, non-avoidable, and

---

[5]    This summary of the interim cash collateral order is qualified in its entirety by reference to the order itself. Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the proposed interim order. The proposed final Cash Collateral order will be on substantially the same terms as the interim Cash Collateral order.

automatically properly perfected replacement liens and security interests granted by each Debtor upon and in all Aircraft Priority Collateral acquired or generated from and after the Petition Date and (ii) second priority, continuing, valid, binding, enforceable, non-avoidable, and automatically properly perfected replacement liens and security interests granted by each Debtor upon and in all Working Capital Priority Collateral acquired or generated from and after the Petition Date. (Id. ¶ 4.b.i.)

    c.    <u>Prepetition Working Capital Lender Superpriority Claim</u>. To the extent of any Diminution and taking into account any Prepetition Working Capital Secured Lender Adequate Protection Liens, the Prepetition Working Capital Lender will be allowed a superpriority administrative expense claim (the "<u>Prepetition Working Capital Lender Superpriority Claim</u>"), which will have priority in these chapter 11 cases under sections 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates of any kind or nature whatsoever, and will be subordinate only to the Carve-Out. (Id. ¶ 4.a.ii.)

    d.    <u>Blue Torch Superpriority Claim</u>. To the extent of any Diminution and taking into account any Adequate Protection Liens granted to Blue Torch, Blue Torch will be allowed a superpriority administrative expense claim (the "<u>Blue Torch Superpriority Claim</u>"), which will have priority in these chapter 11 cases under sections 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates of any kind or nature whatsoever, except such claim will be junior to the Prepetition Working Capital Lender Superpriority Claim (together with the Blue Torch Superpriority Claim, the "<u>Superpriority Claims</u>") and will be subordinate to the Carve-Out. (Id. ¶ 4.b.ii.)

    iv.    <u>Carve-Out</u>. The Superpriority Claims and the liens of the Prepetition Working Capital Lender and Blue Torch, on behalf of the Aircraft Lenders, on the applicable Prepetition Collateral are subordinate to the following (the "<u>Carve Out</u>"): (a) all statutory fees required to be paid by the Debtors to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee in such amounts as agreed to by the U.S. Trustee or as determined by order of the Court under 28 U.S.C. § 1930(a)(6); (b) all accrued and unpaid fees, disbursements, costs, and expenses (the "<u>Professional Fees</u>") incurred by professionals or professional firms retained by the Debtors or their estates pursuant to sections 327, 328 or 363 of the Bankruptcy Code and any statutory committee (each, a "<u>Committee</u>") appointed in the chapter 11 cases pursuant to section 1103 of the Bankruptcy Code (collectively, the "<u>Professionals</u>"), which Professional Fees (x) are allowed by this Court or

another court of competent jurisdiction at any time and (y) were incurred (regardless of when invoiced or applied for) prior to 14 days after the Termination Date; provided, however, that the aggregate amount of such Professional Fees incurred after the Termination Date through 14 days after the Termination Date shall not exceed $500,000. The Debtors are authorized to use Cash Collateral to pay the fees, costs and expenses that constitute the Carve-Out, as the same may be due and payable, either during the period the interim order remains in effect or thereafter, provided that no portion of the Prepetition Collateral or the Cash Collateral may be used by the Debtors, the Committees or any of their Professionals or any other person or entity to commence or prosecute (as opposed to analyze and investigate) any action, contest, challenge or objection with respect to Blue Torch, the Aircraft Lenders, the Blue Torch Loan Documents, the obligations arising thereunder, or the interests of Blue Torch or the Aircraft Lenders in the Prepetition Collateral. In the event the Creditors' Committee is granted standing to pursue Claims against the Prepetition Working Capital Secured Lender or with respect to the Prepetition Working Capital Loan Documents or the obligations arising thereunder, the amount of Cash Collateral that may be used by the Creditors' Committee to prosecute such Claims will be subject to a limit (the "Cap") to be negotiated by the Creditors' Committee and the Prepetition Working Capital Secured Lender in good faith in light of the Claims with respect to which standing was granted. If the parties are unable to reach agreement on the amount of the Cap, the Court will determine the Cap. Nothing in the interim order will be a waiver of the right of the Prepetition Working Capital Secured Lender, Blue Torch or the Debtors to object to any fee application of any professional retained in these chapter 11 cases. (Id. ¶ 5.)

v.     Postpetition Interest. Interest in respect of the obligations under the Prepetition Working Capital Secured Lender Loan Documents will accrue at the non-default rate of 6% per annum as set forth in the Prepetition Working Capital Loan Agreement but will not be payable on a current basis. Interest in respect of the obligations under the Blue Torch Loan Documents will accrue at the non-default rate set forth in the Blue Torch Loan Agreement and will be payable on a current basis on the terms set forth in the Blue Torch Loan Agreement. (Id. ¶ 6.)

vi.     Fees and Expenses. The Debtors are authorized to pay the reasonable and documented postpetition fees and expenses of Zack A. Clement, PLLC and Rochelle McCullough, LLP, as counsel to the Prepetition Working Capital Secured Lender, and each of Proskauer Rose LLP and Bryan Cave Leighton Paisner, LLP, as counsel to Blue Torch. None of the fees, costs, expenses or other amounts payable pursuant to interim order will be subject to separate approval by the Court (but the Court will resolve any dispute as to the reasonableness of any such fees, costs and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto; provided that the Debtors will submit

copies of counsel's invoices to the U.S. Trustee and any Committees, and the Debtors, the U.S. Trustee and any Committees will have ten (10) days following their receipt of such invoices to object to the reasonableness of the fees and expenses included in any such invoice. The invoices for such invoiced fees will include the number of hours billed (except for financial advisors compensated on other than an hourly basis) and a reasonably detailed description of services provided and the expenses incurred by the applicable professional; provided, however, that any such invoice may be redacted to protect privileged, confidential or proprietary information. If any such objection is not resolved within ten (10) days after such objection is timely interposed, a hearing with respect thereto will be conducted at a regularly scheduled omnibus hearing in the chapter 11 cases, provided that the Debtors will pay any undisputed portion of such fees, costs and expenses on the first Thursday following fourteen (14) days after the initial presentment to the Debtors of such invoice. (Id. ¶ 7.)

vii.  Releases. Subject only to the rights granted to certain parties contained in paragraph 9 of the interim order, each of the Debtors and, subject to the entry of the Final Order, the Debtors' estates, on its own behalf and on behalf of its past, present, and future predecessors, successors, heirs, subsidiaries, and assigns hereby to the maximum extent permitted by applicable law, unconditionally, irrevocably, and forever fully release, remise, acquit, relinquish, waive, and discharge each of the Prepetition Secured Parties, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest, in each case, in their respective capacities as such, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, objections, challenges, defenses, counterclaims, setoff rights, rights to subordinate, recoupment, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened (collectively, "Claims"), including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description that exist on the date hereof arising out of, relating to, or in connection with the Debtors, this Order, any of the Prepetition Secured Debt Documents, and/or the transactions contemplated hereunder or thereunder, including, without limitation, (i) any so-called "lender liability", recharacterization or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, perfection, enforceability and/or avoidability of the Prepetition Secured Obligations, the liens securing the Prepetition Secured Obligations, and/or other liens

and/or claims of any of the Prepetition Secured Parties. Notwithstanding anything to the contrary in the interim order, no Claims of the Debtors' estates against any party, including any of the Prepetition Secured Parties, are released pursuant to the interim order.

viii.     Effect of Stipulation on Third Parties. The Debtors' Stipulations contained in paragraph B of the interim order: (i) will be binding upon the Debtors for all purposes; and (ii) will be binding upon all other parties in interest, including any Committees, for all purposes unless (1) a party (subject in all respects to any agreement or applicable law which may limit or affect such entities' right or ability to do so) has properly filed an action on or before June 28, 2019 (the "Challenge Deadline") (x) challenging the amount, validity, enforceability, or priority of the Prepetition Secured Obligations or the Prepetition Secured Parties' security interests in and liens upon the Prepetition Collateral, or (y) otherwise asserting any claims or causes of action against the Prepetition Secured Parties on behalf of the Debtors' estates (a "Challenge"), and (2) the Court rules in favor of the plaintiff in any such timely and properly filed matter. If no such action is properly filed within the requisite time period or the Court does not rule in favor of the plaintiff in any such proceeding, then: (a) the Debtors' Stipulations contained in paragraph B of the interim order and the releases contained in paragraph C of the interim order will be binding on all parties in interest, including any Committees; (b) the Prepetition Secured Obligations will constitute allowed secured claims, without defense, offset, counterclaim, or reduction, and not subject to subordination on any basis, for all purposes in these chapter 11 cases and any subsequent chapter 7 cases; (c) the Prepetition Secured Parties' security interests in and liens upon the Prepetition Collateral will be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected security interests and liens and not subject to subordination or recharacterization under applicable nonbankruptcy law or the Bankruptcy Code; (d) the Prepetition Secured Obligations and the Prepetition Secured Parties' security interests in and liens upon the Prepetition Collateral will not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto; and (e) all parties in interest, including any Committees, will be forever barred from asserting any claims or causes of action arising from or related to the matters subject to the Debtors' Stipulations contained in paragraph B and the releases contained in paragraph C. Nothing contained in the interim order will be deemed to grant standing to any party to commence any adversary proceeding or contested matter. Absent a further order of the Court and notwithstanding anything to the contrary in the interim order, no Claims will be released that are the subject of a Challenge filed by the Challenge Deadline pursuant to the terms of this paragraph. If the Creditors' Committee files a motion seeking standing to commence a Challenge specifically identified in such motion on or prior to the Challenge Deadline, the Challenge Deadline for the Creditors' Committee to

commence such identified Challenge shall be tolled through the earlier of (i) the date of the withdrawal of such motion and (ii) the date that is 14 days after the entry of a dispositive ruling on such motion. Notwithstanding anything to the contrary in the interim order, no more than $100,000 in the aggregate of proceeds of any Prepetition Collateral or Cash Collateral may be used by the Committees to investigate, but not to prepare, initiate, or prosecute, any claims and defenses against Blue Torch prior to the Challenge Deadline. (Id. ¶ 9.)

ix.    Termination. The Debtors' right to use Cash Collateral will terminate (the date of any such termination, the "Termination Date") without further Court order only upon written notice to the Debtors seeking the termination of the Debtors' use of Cash Collateral following one of the following events: (i) the dismissal of these chapter 11 cases or the conversion of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code or any Debtor shall have filed (or failed to object to) a motion or other pleading seeking such dismissal or conversion, in each case, without the prior written consent of the Prepetition Secured Parties in their sole discretion; (ii) the appointment or election of a trustee, examiner with expanded powers or any other representative with expanded powers; (iii) the effective date of a confirmed plan of reorganization or liquidation of any of the Debtors; (iv) the date of the consummation of a sale or other disposition of all or substantially all of the assets of the Debtors; (v) the Debtors' failure to make any of the payments under the interim order to the Prepetition Secured Parties when due, including the payments in paragraphs 6 and 7 of the interim order where such failure shall have continued unremedied for five (5) business days following the delivery of a default notice by the Prepetition Secured Parties to the Debtors; (vi) any Debtor files, proposes or otherwise supports any chapter 11 plan that does not provide for unimpaired treatment to Blue Torch, including in respect of all Prepetition Secured Obligations owed to Blue Torch, on the effective date of such plan, unless such chapter 11 plan provides for treatment that is acceptable to Blue Torch in its sole discretion; (vii) the Court shall have entered an order confirming a chapter 11 plan of any of the Debtors that does not provide for unimpaired treatment to Blue Torch, including in respect of all Prepetition Secured Obligations owed to Blue Torch, on the effective date of such plan, unless such chapter 11 plan provides for treatment that is acceptable to Blue Torch in its sole discretion; (vi) the Court shall have entered an order terminating exclusivity under section 1121 of the Bankruptcy Code other than on a motion or application filed at the direction of or with the consent of the Prepetition Secured Parties; and (vii) the Debtors shall violate any of the provisions of the interim order, unless such violation is remedied within five (5) business days following the delivery of a default notice by the Prepetition Secured Parties to the Debtors; provided, however, that any plan that provides for treatment to Blue Torch contemplated under the *Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 155] will not permit termination of the Debtors' use of Cash Collateral

pursuant to subparagraphs 10(vi) and 10(vii) of the interim order. Nothing in the interim order will constitute Blue Torch's consent to, or acceptance of, any plan of reorganization or liquidation. The Debtors will be entitled to use Cash Collateral pursuant to the terms of the interim order for 14 days following the Termination Date, unless further extended or otherwise ordered by the Court. Notwithstanding anything to the contrary herein, after the occurrence of a Termination Date, the Debtors, in their sole discretion, will be permitted to use Cash Collateral to avoid any immediate and irreparable harm. (Id. ¶ 10.)

x.   Postpetition Interest and Fees. All interest, fees and costs due and payable under the Prepetition Working Capital Loan Agreement and the Aircraft Loan Agreement, as applicable, will continue to accrue notwithstanding the commencement of these cases; provided, however, in the event it is subsequently determined that any of the Prepetition Secured Parties is undersecured or unsecured or its Prepetition Secured Obligations are recharacterized, subordinated, or disallowed, such party shall not be entitled to the accrual of any postpetition interest, fees and costs in accordance with this paragraph and any such interest, fees or costs that were paid pursuant to the interim order will be subject to recharacterization as principal, or other appropriate remedy determined by the Court.

## RELIEF REQUESTED AND BASIS THEREOF

21.   The Debtors seek authority to use Cash Collateral in accordance with the terms of the proposed cash collateral orders to pay post-petition expenses of business operations and to administer these chapter 11 cases. As described above, the Debtors' requested use of Cash Collateral is necessary to permit normal business operations and should be authorized for the reasons set forth below. Specifically, and pending the entry of a final order authorizing the Debtors to use Cash Collateral, the Debtors request that the Court enter an interim cash collateral order, substantially in the form attached hereto as **Exhibit A**: (a) authorizing the Debtors to use Cash Collateral on the terms contained therein; (b) granting the Prepetition Secured Parties adequate protection with respect thereto; and (c) granting related relief.

22.   A debtor's use of property of the estate, including cash collateral, is governed by section 363 of the Bankruptcy Code. Pursuant to section 363(c)(2), a debtor may use cash collateral if "(A) each entity that has an interest in such cash collateral consents; or (B) the court,

after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of [section 363]." 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code further provides that "on request of an entity that has an interest in property . . . to be used, sold or leased, by the trustee, the court . . . shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

23. The Bankruptcy Code does not expressly define "adequate protection." Section 361 of the Bankruptcy Code, however, provides a non-exhaustive list of examples of adequate protection, including replacement liens and administrative priority claims. 11 U.S.C. § 361. Generally, courts decide what constitutes adequate protection on a case-by-case basis. *See In re Braniff Airways, Inc.*, 783 F.2d 1283, 1286 (5th Cir. 1986); *see also Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006) ("The term 'adequate protection' is intended to be a flexible concept."); *In re Columbia Gas Sys., Inc.*, No. 91-803, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992) (emphasizing that "the varying analyses and results contained in the . . . slew of cases demonstrate that what interest is entitled to adequate protection and what constitutes adequate protection must be decided on a case-by-case basis"); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (*citing* 2 Collier on Bankruptcy ¶ 361.01 [1] at 361-66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding").

24. Here, as discussed above, to adequately protect the interests of the Prepetition Secured Parties in the Prepetition Collateral, the proposed cash collateral orders provide (a) Thirty

Two with replacement liens and security interests on accounts receivable solely to the extent of any decrease in the value of the Prepetition Working Capital Lender's interest in its Prepetition Collateral (including Cash Collateral) that would result from any use, sale, or lease of the Prepetition Collateral (including Cash Collateral) absent such a grant of the Prepetition Working Capital Secured Lender Adequate Protection Liens and (b) Blue Torch with replacement liens and security interests on its Prepetition Collateral solely to the extent of any decrease in the value of the Aircraft Lenders' (including Blue Torch's) interest in their Prepetition Collateral (including Cash Collateral) that would result from any use, sale, or lease of the Prepetition Collateral (including Cash Collateral) absent such a grant of the Adequate Protection Liens to Blue Torch. In addition, in accordance with sections 503(b) and 507(b) of the Bankruptcy Code, the proposed cash collateral orders provide for the Superpriority Claims with priority over all other administrative claims. Courts in this and other districts have approved similar adequate protection provisions in recent chapter 11 cases. *See, e.g.*, *In re Taco Bueno Restaurants, Inc.*, No. 18-33678 (SGJ) (Bankr. N.D. Tex. Nov. 30, 2018) (Docket No. 160); *In re CHC Group Ltd.*, No. 16-31854 (SGJ) (Bankr. N.D. Tex. Jan. 6, 2017) (Docket No. 1452); *In re Energy XXI LTD*, No. 16-31928 (DRJ) (Bankr. S. D. Tex. April 15, 2016) (Docket No. 66); *In re Alco Stores, Inc.*, No. 14-34941 (SGJ) (Bankr. N. D. Tex. October 16, 2014) (Docket No. 67).

     25.    For all the foregoing reasons, the Debtors submit that the terms of the interim and final cash collateral orders are reasonable and beneficial to the Debtors' estates and creditors. The cash collateral orders will permit the Debtors to continue operating their businesses and administer these chapter 11 cases for the benefit of all stakeholders. Moreover, the cash collateral orders' provisions for adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral are fair and reasonable under the circumstances of these cases.

## REQUEST FOR AUTHORITY TO USE CASH COLLATERAL IMMEDIATELY

26.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion for authorization to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion.  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the debtor's estate pending a final hearing.

27.     Pursuant to Bankruptcy Rule 4001(b), the Debtors request that the Court conduct an interim hearing and authorize the Debtors to use, on an interim basis, Cash Collateral in accordance with the terms of the proposed interim cash collateral order in order to (a) fund the Debtors' business operations and the administration of these cases and (b) avoid immediate and irreparable harm to the Debtors' estate and all parties in interest.

28.     As noted above, the Debtors will be unable to pay postpetition costs and expenses, including certain expenses necessary to operate their businesses and to administer these chapter 11 cases, unless the Court authorizes interim use of the Cash Collateral.  Therefore, the Debtors request that the Court enter a cash collateral order authorizing the Debtors to use Cash Collateral in accordance with the terms of the proposed interim order until a final determination is made on this Motion.

## NOTICE

29.     Notice of this Motion shall be provided to:  (a) the U.S. Trustee; (b) counsel to the Creditors' Committee; (c) counsel to the Equity Committee; (d) counsel to Blue Torch; (e) counsel to Delaware Trust Company, in its capacity as indenture trustee under the 5.25% unsecured notes; (f) counsel to Prepetition Working Capital Secured Lender; (g) the Internal Revenue Service;

(h) the Securities and Exchange Commission; (i) any party that has requested notice under Bankruptcy Rule 2002; and (j) any other party in interest entitled to notice of this Motion.

## NO PRIOR REQUEST

30.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court (i) enter the interim cash collateral order, substantially in the form attached hereto as **Exhibit A**, approving the relief requested in this Motion, (ii) schedule a final hearing on the Motion and thereafter enter a final cash collateral order and (iii) grant such other and further relief to the Debtors as the Court may deem proper.

Dated: May 8, 2019
        Dallas, Texas

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Daniel Prieto*
Daniel Prieto, State Bar No. 24048744
1717 Main Street, Suite 4600
Dallas, Texas 75201
Tel: (214) 743-4500
Fax: (214) 743-4545
Email: dan.prieto@dlapiper.com

-and-

Thomas R. Califano (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 335-4500
Fax: (212) 335-4501
Email: thomas.califano@dlapiper.com

-and-

Daniel M. Simon (admitted *pro hac vice*)
David Avraham (admitted *pro hac vice*)
Tara Nair (admitted *pro hac vice*)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Tel: (312) 368-4000
Fax: (312) 236-7516
Email: daniel.simon@dlapiper.com
      david.avraham@dlapiper.com
      tara.nair@dlapiper.com

*Counsel to the Debtors*