

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 15, 2019**

_____
**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| PHI, Inc., *et al.*[1] | § | Case No. 19-30923-hdh11 |
| | § | |
| Debtors. | § | (Jointly Administered) |

### FINAL ORDER AUTHORIZING USE OF
### CASH COLLATERAL AND GRANTING RELATED RELIEF

This matter coming before this Court on the *Motion of the Debtors for Interim and Final Orders Authorizing Use of Cash Collateral and Granting Related Relief* (the "Motion"),[2] filed by the above-captioned debtors (collectively, the "Debtors"); the Court having reviewed the Motion, and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at an interim hearing on the Motion held on May 13, 2019 (the "Interim Hearing") and at the final hearing on the Motion held on July 11, 2019 (the "Final

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PHI, Inc. (5707), PHI Air Medical, LLC (4705), AM Equity Holdings, L.L.C. (0730), PHI Tech Services, Inc. (5089) and PHI Helipass, L.L.C. (4187). The corporate headquarters and the mailing address for the Debtors listed above is 2001 SE Evangeline Thruway, Lafayette, Louisiana 70508.

[2] Capitalized terms used but not defined herein shall have the meanings given to such terms in the Motion.

Hearing"); and the Court having entered an interim order on May 16, 2019 authorizing use of cash collateral on an interim basis and granting adequate protection [Docket No. 482] (the "Interim Order"); the Court having entered a stipulation and agreed order on June 21, 2019 amending the Interim Order [Docket No. 711]; the Court having found that notice of the Motion and the Final Hearing was adequate and appropriate under the circumstances; all objections to the entry of this Final Order having been withdrawn, resolved or overruled by the Court; and the Court having determined that the legal and factual bases set forth in the Motion and the First Day Declaration and at the Interim Hearing and Final Hearing establish just cause for the relief granted herein;

THE COURT HEREBY FINDS:

A.     On March 14, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  The U.S. Trustee appointed the Creditors' Committee on March 25, 2019 and appointed the Equity Committee on April 25, 2019.  As of the date hereof, no trustee or examiner has been appointed in these chapter 11 cases.  This Court has core jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue of this proceeding and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     On June 5, 2019, the Debtors, the Creditors' Committee, Thirty Two, L.L.C., and Delaware Trust Company, solely in its capacity as indenture trustee for the Debtors' unsecured 5.25% senior notes, entered into a Settlement Plan Term Sheet (the "Settlement Term Sheet"), a copy of which was filed as Exhibit A to the *Stipulation Regarding Matters to be Resolved Pursuant to Bankruptcy Rule 9019* [Docket No. 624].

C. Without prejudice to the rights of parties in interest as set forth in paragraph 9 below, the Debtors admit, stipulate, acknowledge and agree that:

i. On September 18, 2013, PHI, Inc., as borrower, and certain subsidiary guarantors, entered into that certain Second Amended and Restated Loan Agreement, under which Whitney Bank, as lender, agreed to provide PHI, Inc. with a secured revolving line of credit in the aggregate principal amount of $150 million (the "Whitney Loan"). On September 28, 2018, PHI, Inc., as borrower, entered into that certain term loan agreement (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition Working Capital Loan Agreement") with Thirty Two, L.L.C., as lender (the "Prepetition Working Capital Secured Lender"), pursuant to which the Prepetition Working Capital Secured Lender made a term loan in the aggregate principal amount of $130 million, the proceeds of which refinanced the Whitney Loan in full. PHI, Inc.'s obligations under the Prepetition Working Capital Loan Agreement and all agreements and documents delivered pursuant thereto or in connection therewith, including, but not limited to, any and all collateral and security documents (each as amended, restated, supplemented or otherwise modified, the "Prepetition Working Capital Loan Documents") are guaranteed by Debtors PHI Air Medical, L.L.C. and PHI Tech Services, Inc. (together, the "Prepetition Working Capital Guarantors").

ii. As of the Petition Date, PHI, Inc. and the Prepetition Working Capital Guarantors (singularly, an "Obligor" and, collectively, the "Obligors") were each jointly and severally indebted and liable to the Prepetition Working Capital Secured Lender in respect of the Prepetition Working Capital Loan Documents (the "Thirty Two Claim") in the amount of $130,000,000, plus accrued and unpaid interest as of the Petition Date; provided, however, that, pursuant to the Settlement Term Sheet, on the Plan Effective Date (as defined in the Settlement

3

Term Sheet), the Thirty Two Claim will be an allowed secured claim in the amount of $132,250,000, which amount shall be deemed to include any and all accrued interest, fees (including, without limitation, professional fees), and/or expenses, in each case, whether or not paid by the Debtors prior to the Plan Effective Date in connection with any order of the Court, including pursuant to the Interim Order and this Final Order.

        iii.        The Obligors' obligations under the Prepetition Working Capital Loan Documents are secured by first priority, valid, binding, perfected and enforceable liens and security interests granted by each Obligor upon and in all Inventory, Accounts, and Spare Parts (as each such term is defined in the Prepetition Working Capital Loan Documents) located in the United States, but excluding the O&G Aircraft Spare Parts (as defined in that certain Intercreditor Agreement, dated March 13, 2019 between the Prepetition Working Capital Secured Lender and Blue Torch Capital LP ("Blue Torch") (as amended, restated, supplemented or otherwise modified, the "Intercreditor Agreement"), and all interest, income, fruits, returns, accessions, profits, products and proceeds of any of the foregoing (collectively, the "Working Capital Priority Collateral"). The Prepetition Working Capital Loan Documents provided that the lien granted on the Working Capital Priority Collateral extended to property later acquired by the Obligors, including any property added to or substituted for any of the foregoing. Pursuant to the Intercreditor Agreement, the Prepetition Working Capital Lender subordinated its first lien in the O&G Aircraft Spare Parts in favor of Blue Torch. Pursuant to that certain Second Lien Aircraft Security Agreement, dated March 13, 2019, the Obligors' obligations under the Prepetition Working Capital Loan Documents are also secured by second priority, valid, binding, perfected and enforceable liens and security interests granted by each Obligor upon and in the Collateral (as

defined in the Second Lien Aircraft Security Agreement), subject to the Obligations Cap (as defined in the Second Lien Aircraft Security Agreement).

iv.        On March 13, 2019, PHI, Inc., as borrower; the other Debtors, as guarantors; Blue Torch, as agent; and the lenders party thereto (collectively, the "Aircraft Lenders" and, together with Blue Torch and the Prepetition Working Capital Secured Lender, the "Prepetition Secured Parties"), entered into that certain Loan Agreement (as amended, restated, supplemented or otherwise modified from time to time, the "Aircraft Loan Agreement" and, together with all agreements and documents delivered pursuant thereto or in connection therewith, including, but not limited to, any and all collateral and security documents, each as amended, restated, supplemented or otherwise modified, the "Blue Torch Loan Documents" and, together with the Prepetition Working Capital Loan Documents, the "Prepetition Secured Debt Documents"), pursuant to which the Aircraft Lenders provided a term loan to the Debtors in the aggregate amount of $70 million.

v.        As of the Petition Date, each of the Debtors were jointly and severally indebted and liable to the Aircraft Lenders in respect of the Blue Torch Loan Documents in the amount of $70,000,000, plus accrued and unpaid interest as of the Petition Date.

vi.        The Debtors' obligations under the Blue Torch Loan Documents are secured by (a) first priority, valid, binding, perfected and enforceable liens and security interests granted by each Debtor upon and in all the Aircraft Priority Collateral (as defined in the Intercreditor Agreement) and (b) second priority, valid, binding, perfected and enforceable liens and security interests granted by each Debtor upon and in the Working Capital Priority Collateral.

vii.        All of the Debtors' cash, including the cash in its deposit accounts, wherever located, that constitutes proceeds of Working Capital Priority Collateral and Aircraft Priority

Collateral (together with the Working Capital Priority Collateral, the "Prepetition Collateral"), constitutes the cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code) ("Cash Collateral") of the Prepetition Secured Parties. The funds advanced by Blue Torch under the terms of the Blue Torch Loan Documents do not constitute Cash Collateral.

viii. As of the Petition Date, (i) the aggregate value of the Working Capital Priority Collateral exceeds the amounts outstanding under the Prepetition Working Capital Loan Documents and (ii) the aggregate value of the Aircraft Priority Collateral exceeds the amounts outstanding under the Blue Torch Loan Documents (together with the amounts outstanding under the Prepetition Working Capital Loan Documents, the "Prepetition Secured Obligations").

ix. The foregoing paragraphs C.i through C.viii are collectively referred to herein as the "Debtors' Stipulations."

D. Subject only to the rights granted to certain parties contained in paragraph 9, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of its past, present, and future predecessors, successors, heirs, subsidiaries, and assigns hereby to the maximum extent permitted by applicable law, unconditionally, irrevocably, and forever fully release, remise, acquit, relinquish, waive, and discharge each of the Prepetition Secured Parties, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest, in each case, in their respective capacities as such (collectively, the "Released Parties"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, objections, challenges, defenses, counterclaims, setoff rights, rights to subordinate, recoupment, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries,

attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened (collectively, "Claims"), including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description that exist on the date hereof arising out of, relating to, or in connection with the Debtors, this Final Order, any of the Prepetition Secured Debt Documents, and/or the transactions contemplated hereunder or thereunder, including, without limitation, (i) any so-called "lender liability", recharacterization or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, perfection, enforceability and/or avoidability of the Prepetition Secured Obligations (as defined below), the liens securing the Prepetition Secured Obligations, and/or other liens and/or claims of any of the Prepetition Secured Parties; provided, however, that no Claims of the Debtors or the Debtors' estates against the Prepetition Working Capital Secured Lender or its Released Parties shall be released pursuant to this Final Order. Nothing in this Final Order shall release Claims of the Debtors or the Debtors' estates against the Debtors' respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest, in each case, in their respective capacities as such.

E.     During these chapter 11 cases, prior to entry of the Interim Order, the Debtors did not have authorization to use Cash Collateral, including the proceeds of accounts receivable acquired prior to the Petition Date and collected during these cases. Accordingly, the Debtors segregated Cash Collateral pending entry of the Interim Order authorizing the use of Cash Collateral.

F. The Prepetition Secured Parties consent to the Debtors' use of the Cash Collateral, subject to the entry of this Final Order and the terms and conditions set forth herein, including the granting of replacement liens on accounts receivable acquired by the Debtors' estates after the commencement of these cases.

G. The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2), and the Debtors have a need to obtain use of Cash Collateral to, among other things, conduct their business operations and maximize the value of the Debtors' estates. Without such funds, the Debtors will be unable to pay employees, suppliers and other operating expenses and obtain goods and services needed to carry on their operations during the chapter 11 cases. The ability of the Debtors to obtain liquidity through the use of the Cash Collateral is necessary to avoid harm to the Debtors' estates.

H. Good cause has been shown for the entry of this Final Order. Permitting the use of Cash Collateral on the terms and conditions as set forth herein is in the best interests of the Debtors' estates.

I. The terms of this Final Order and the use by the Debtors of the Cash Collateral as set forth herein have been negotiated in good faith and at arms' length between the Debtors and the Prepetition Secured Parties.

BASED UPON THE FOREGOING FINDINGS AND CONCLUSIONS, UPON THE MOTION, THE FIRST DAY DECLARATION AND OTHER PLEADINGS FILED IN THESE CHAPTER 11 CASES AND UPON THE RECORD MADE BEFORE THIS COURT AT THE INTERIM HEARING AND THE FINAL HEARING, IT IS HEREBY ORDERED THAT:

1. <u>Approval</u>. The Motion is granted on a final basis on the terms and conditions set forth in this Final Order. Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.     <u>Authority to Use Cash Collateral</u>.  Subject to the terms of this Final Order, the Debtors are immediately authorized to use Cash Collateral from the date of entry of this Final Order through and including the date that is 14 days after the Termination Date (as defined in paragraph 10), unless further extended or otherwise ordered by the Court, for (a) general corporate purposes, (b) capital expenditures, (c) payment of costs of administration of these chapter 11 cases, and (d) payment of the costs and expenses of the Prepetition Working Capital Secured Lender and Blue Torch in connection with these chapter 11 cases, in each case to the extent provided under this Final Order.

3.     <u>Entitlement to Adequate Protection</u>.  The Prepetition Secured Parties are entitled, pursuant to sections 361, 363(c)(2), and 363(e) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including Cash Collateral.  For purposes of calculating the right to a super-priority, adequate protection claim under sections 503(b) and 507(b) of the Bankruptcy Code, "<u>Diminution</u>" shall mean, with respect to a Prepetition Secured Party, diminution in value in an amount equal to the aggregate postpetition diminution in the value of its Prepetition Collateral from the date hereof from the Debtors' use, sale, or lease of such property or from the imposition of the automatic stay to the extent such diminution reduces the value of such Prepetition Collateral below the amount of the applicable Prepetition Secured Obligations, thus resulting in or increasing the amount of an unsecured claim.

4.     <u>Adequate Protection</u>

a.     <u>Prepetition Working Capital Secured Lender.</u>  Pursuant to sections 361, 363(c)(2) and 363(e) of the Bankruptcy Code, the Prepetition Working Capital Secured Lender shall receive the following as adequate protection:

i.     <u>Adequate Protection Liens.</u>  The Prepetition Working Capital Lender is hereby granted first priority, continuing, valid, binding, enforceable, non-avoidable, and automatically properly perfected replacement liens and security interests granted by each Obligor upon and in all Accounts (as such term is defined in the Prepetition Secured Debt Documents) acquired or generated from and after the Petition Date and all proceeds, products,

offspring or profits of such Accounts (the "Prepetition Working Capital Secured Lender Adequate Protection Liens") to the extent of any decrease in the value of the Prepetition Working Capital Lender's interest in its Prepetition Collateral (including Cash Collateral) that would result from any use, sale, or lease of the Prepetition Collateral (including Cash Collateral) absent such a grant of the Prepetition Working Capital Secured Lender Adequate Protection Liens.

ii. Superpriority Claim. To the extent of any Diminution and taking into account any Prepetition Working Capital Secured Lender Adequate Protection Liens, the Prepetition Working Capital Lender is hereby granted a superpriority administrative expense claim (the "Prepetition Working Capital Lender Superpriority Claim"), which shall have priority in these chapter 11 cases under sections 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Obligors and their estates of any kind or nature whatsoever, and shall be subordinate only to the Carve-Out (as defined below).

b. Blue Torch. Pursuant to sections 361, 363(c)(2) and 363(e) of the Bankruptcy Code, Blue Torch, for the ratable benefit of the Aircraft Lenders, shall receive the following as adequate protection:

i. Adequate Protection Liens. Blue Torch is hereby granted (a) first priority, continuing, valid, binding, enforceable, non-avoidable, and automatically properly perfected replacement liens and security interests granted by each Debtor upon and in all Aircraft Priority Collateral acquired or generated from and after the Petition Date and (b) second priority, continuing, valid, binding, enforceable, non-avoidable, and automatically properly perfected replacement liens and security interests granted by each Debtor upon and in all Working Capital Priority Collateral acquired or generated from and after the Petition Date (together with the Prepetition Working Capital Secured Lender Adequate Protection Liens, the "Adequate Protection Liens") to the extent of any decrease in the value of the Aircraft Lenders' (including Blue Torch's) interest in their Prepetition Collateral (including Cash Collateral) that would result from any use, sale, or lease of the Prepetition Collateral (including Cash Collateral) absent such a grant of the Adequate Protection Liens to Blue Torch.

ii. Superpriority Claim. To the extent of any Diminution and taking into account any Adequate Protection Liens granted to Blue Torch, Blue Torch is hereby granted a superpriority administrative expense claim (the "Blue Torch Superpriority Claim"), which shall have priority in these chapter 11 cases under sections 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates of any kind or nature whatsoever, except such claim shall be junior to the Prepetition Working Capital Lender Superpriority Claim (together with the Blue Torch Superpriority Claim, the "Superpriority Claims") and shall be subordinate to the Carve-Out.

5. Carve-Out. The Superpriority Claims and the liens of the Prepetition Working Capital Lender and Blue Torch, on behalf of the Aircraft Lenders, on the applicable Prepetition Collateral are subordinate to the following (the "Carve Out"): (a) all statutory fees required to be

paid by the Debtors to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under 28 U.S.C. § 1930(a)(6); (b) all accrued and unpaid fees, disbursements, costs, and expenses (the "Professional Fees") incurred by professionals or professional firms retained by the Debtors or their estates pursuant to sections 327, 328 or 363 of the Bankruptcy Code and any statutory committee (each, a "Committee") appointed in the chapter 11 cases pursuant to section 1103 of the Bankruptcy Code (collectively, the "Professionals"), which Professional Fees (x) are allowed by this Court or another court of competent jurisdiction at any time and (y) were incurred (regardless of when invoiced or applied for) prior to 14 days after the Termination Date; provided, however, that the aggregate amount of such Professional Fees incurred after the Termination Date through 14 days after the Termination Date shall not exceed $500,000. The Debtors are authorized to use Cash Collateral to pay the fees, costs and expenses that constitute the Carve-Out, as the same may be due and payable, either during the period this Final Order remains in effect or thereafter, provided that no portion of the Prepetition Collateral or the Cash Collateral may be used by the Debtors, the Committees or any of their Professionals or any other person or entity to commence or prosecute (as opposed to analyze and investigate) any action, contest, challenge or objection with respect to Blue Torch, the Aircraft Lenders, the Blue Torch Loan Documents, the obligations arising thereunder, or the interests of Blue Torch or the Aircraft Lenders in the Prepetition Collateral. In the event the Creditors' Committee is granted standing to pursue Claims against the Prepetition Working Capital Secured Lender or with respect to the Prepetition Working Capital Loan Documents or the obligations arising thereunder, the amount of Cash Collateral that may be used by the Creditors' Committee to prosecute such Claims shall be subject to a limit (the "Cap") to be negotiated by the Creditors' Committee and the Prepetition Working Capital Secured Lender in good faith in light of the Claims with respect to which standing

was granted. If the parties are unable to reach agreement on the amount of the Cap, the Court shall determine the Cap. Nothing herein shall be a waiver of the right of any party, including the Creditors' Committee, the Prepetition Working Capital Secured Lender, Blue Torch or the Debtors, to object to any fee application of any professional retained in these chapter 11 cases.

6. <u>Postpetition Interest</u>.

a. Interest in respect of the obligations under the Prepetition Working Capital Secured Lender Loan Documents shall accrue at the non-default rate of 6% per annum as set forth in the Prepetition Working Capital Loan Agreement but shall not be payable on a current basis.

b. Interest in respect of the obligations under the Blue Torch Loan Documents shall accrue at the non-default rate set forth in the Blue Torch Loan Agreement and shall be payable on a current basis on the terms set forth in the Blue Torch Loan Agreement.

7. <u>Fees and Expenses</u>. The Debtors are authorized to pay, in accordance with this paragraph, the reasonable and documented postpetition fees and expenses of each of Zack A. Clement, PLLC and Rochelle McCullough, LLP, as counsel to the Prepetition Working Capital Secured Lender, and each of Proskauer Rose LLP, Reed Smith, LLP, and Abogados Sierra, S.C., as counsel to Blue Torch. None of the fees, costs, expenses or other amounts payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees, costs and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto; <u>provided</u> that the Debtors shall submit copies of counsel's invoices to the U.S. Trustee and any Committees, and the Debtors, the U.S. Trustee and any Committees shall have ten (10) days following their receipt of such invoices to object to the reasonableness of the fees and expenses included in any such invoice. The invoices for such invoiced fees shall include the number of hours billed (except

for financial advisors compensated on other than an hourly basis) and a reasonably detailed description of services provided and the expenses incurred by the applicable professional; provided, however, that any such invoice may be redacted to protect privileged, confidential or proprietary information. If any such objection is not resolved within ten (10) days after such objection is timely interposed, a hearing with respect thereto shall be conducted at a regularly scheduled omnibus hearing in the chapter 11 cases, provided that the Debtors shall pay any undisputed portion of such fees, costs and expenses on the first Thursday following fourteen (14) days after the initial presentment to the Debtors of such invoice. The unused portion of any expense deposit provided by the Debtors to Blue Torch shall either be (i) applied to reduce Blue Torch's final invoice for its professionals' fees and expenses in these chapter 11 cases or (ii) applied to reduce the outstanding obligations of the Debtors to Blue Torch pursuant to the Blue Torch Loan Documents in connection with consummation of any chapter 11 plan.

8. _Payment Protocol_. Other than the payment of professional expenses and fees pursuant to this Order, any other payments made pursuant to this Order for the benefit of the Prepetition Secured Parties shall be paid in accordance with the Intercreditor Agreement.

9. _Effect of Stipulation on Third Parties_. The Debtors' Stipulations contained in paragraph C of this Final Order and the release contained in paragraph D of this Final Order: (i) shall be binding upon the Debtors for all purposes; and (ii) shall be binding upon all other parties in interest, including any Committees, for all purposes unless (1) a party (subject in all respects to any agreement or applicable law which may limit or affect such entities' right or ability to do so) has properly filed an action or commenced a contested matter (as procedurally appropriate) on or before June 28, 2019 (the "_Challenge Deadline_") (x) challenging the amount, validity, enforceability, or priority of the Prepetition Secured Obligations or the Prepetition Secured Parties'

security interests in and liens upon the Prepetition Collateral, or (y) otherwise asserting any claims or causes of action against the Prepetition Secured Parties on behalf of the Debtors' estates (a "Challenge"), and (2) the Court rules in favor of the plaintiff in any such timely and properly filed matter.  If no such action is properly filed within the requisite time period or the Court does not rule in favor of the plaintiff in any such proceeding, then:   (a) the Debtors' Stipulations contained in paragraph C of this Final Order and the releases contained in paragraph D of this Final Order shall be binding on all parties in interest, including any Committees; (b) the Prepetition Secured Obligations shall constitute allowed secured claims, without defense, offset, counterclaim, or reduction, and not subject to subordination on any basis, for all purposes in these chapter 11 cases and any subsequent chapter 7 cases; (c) the Prepetition Secured Parties' security interests in and liens upon the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected security interests and liens and not subject to subordination or recharacterization under applicable nonbankruptcy law or the Bankruptcy Code; (d) the Prepetition Secured Obligations and the Prepetition Secured Parties' security interests in and liens upon the Prepetition Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto; and (e) all parties in interest, including any Committees, shall be forever barred from asserting any claims or causes of action arising from or related to the matters subject to the Debtors' Stipulations contained in paragraph C and the releases contained in paragraph D; provided, that the Challenge Deadline is hereby tolled and extended with respect to the Creditors' Committee through,  as to the Prepetition Secured Parties, the earliest of (a) 22 days after the date that the Settlement Term Sheet is terminated, (b) the date that the Transaction (as defined in the Settlement Term Sheet) is consummated, and, solely as to Blue Torch and the Aircraft Lenders,

14

(c) September 1, 2019.  Nothing contained in this Final Order shall be deemed to grant standing to any party to commence any adversary proceeding or contested matter.  Absent a further order of this Court and notwithstanding anything to the contrary in this Final Order, no Claims shall be released that are the subject of a Challenge filed by the Challenge Deadline pursuant to the terms of this paragraph.  If the Creditors' Committee files a motion seeking standing to commence a Challenge specifically identified in such motion on or prior to the Challenge Deadline, the Challenge Deadline for the Creditors' Committee to commence such identified Challenge shall be tolled through the earlier of (i) the date of the withdrawal of such motion and (ii) the date that is 14 days after the entry of a dispositive ruling by this Court on such motion.  Notwithstanding anything to the contrary herein, no more than $100,000 in the aggregate of proceeds of any Prepetition Collateral or Cash Collateral may be used by the Committees to investigate, but not to prepare, initiate, or prosecute, any claims and defenses against Blue Torch prior to the Challenge Deadline.

10.    Termination.  The Debtors' right to use Cash Collateral as approved herein shall terminate (the date of any such termination, the "Termination Date") without further Court order only upon the earlier to occur of (a) September 30, 2019 and (b) written notice to the Debtors seeking the termination of the Debtors' use of Cash Collateral following one of the following events:  (i) the dismissal of these chapter 11 cases or the conversion of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code or any Debtor shall have filed (or failed to object to) a motion or other pleading seeking such dismissal or conversion, in each case, without the prior written consent of the Prepetition Secured Parties in their sole discretion; (ii) the appointment or election of a trustee, examiner with expanded powers or any other representative with expanded powers; (iii) the effective date of a confirmed plan of reorganization or liquidation of any of the

Debtors; (iv) the date of the consummation of a sale or other disposition of all or substantially all of the assets of the Debtors; (v) the Debtors' failure to make any of the payments under this Final Order to the Prepetition Secured Parties when due, including the payments in paragraphs 6 and 7 where such failure shall have continued unremedied for five (5) business days following the delivery of a default notice by the Prepetition Secured Parties to the Debtors; (vi) any Debtor files, proposes or otherwise supports any chapter 11 plan that does not provide for unimpaired treatment to Blue Torch, including in respect of all Prepetition Secured Obligations owed to Blue Torch, on the effective date of such plan, unless such chapter 11 plan provides for treatment that is acceptable to Blue Torch in its sole discretion; (vii) the Court shall have entered an order confirming a chapter 11 plan of any of the Debtors that does not provide for unimpaired treatment to Blue Torch, including in respect of all Prepetition Secured Obligations owed to Blue Torch, on the effective date of such plan, unless such chapter 11 plan provides for treatment that is acceptable to Blue Torch in its sole discretion; (viii) the Court shall have entered an order terminating exclusivity under section 1121 of the Bankruptcy Code other than on a motion or application filed at the direction of or with the consent of the Prepetition Secured Parties; (ix) the Debtors shall violate any of the provisions of this Final Order, unless such violation is remedied within five (5) business days following the delivery of a default notice by the Prepetition Secured Parties to the Debtors; (x) termination of the Settlement Term Sheet; (xi) denial of confirmation of the Consensual Plan (as defined in the Settlement Term Sheet) by the Court; or (xii) the conditions precedent to the effective date of the Consensual Plan are not satisfied or waived in accordance with the terms of the Consensual Plan. Nothing in this Final Order shall constitute Blue Torch's consent to, or acceptance of, any plan of reorganization or liquidation. The Debtors shall be entitled to use Cash Collateral pursuant to the terms of this Final Order for 14 days following the Termination Date,

unless further extended or otherwise ordered by the Court.  Notwithstanding anything to the contrary herein, after the occurrence of a Termination Date, the Debtors, in their sole discretion, shall be permitted to use Cash Collateral to avoid any immediate and irreparable harm.  The Termination Date may be extended from time to time by a written agreement between and among the Debtors, the Prepetition Secured Parties and the Committees without the need for further approval of this Court, subject only to the filing of such agreement with this Court.

11.     <u>Proofs of Claim</u>.  Blue Torch, on behalf of the Aircraft Lenders, shall not be required to file a proof of claim in these chapter 11 cases, and the Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim against the applicable Debtors by Blue Torch, on behalf of the Aircraft Lenders, in the applicable amounts of the Prepetition Secured Obligations.

12.     <u>Reservation of Rights</u>.  The entry of this Final Order and the grant of adequate protection to the Prepetition Secured Parties pursuant to the terms hereof shall be without prejudice to the rights of the Debtors, following the occurrence of the Termination Date, to seek authority to use Cash Collateral without the consent of the Prepetition Secured Parties, and the Prepetition Secured Parties' rights to contest any such request.  In any hearing related to such nonconsensual use of Cash Collateral, the Debtors and the Prepetition Secured Parties may raise, assert, prosecute, or otherwise advance any and all rights and arguments that could be asserted at such hearing. Notwithstanding any provision of the Interim Order or this Final Order to the contrary, the Adequate Protection Liens granted pursuant to the Interim Order and this Final Order are subject and/or subordinate to valid, perfected and unavoidable liens and security interests in the Prepetition Collateral that are senior to the applicable Prepetition Secured Party's prepetition liens in such Prepetition Collateral, including any valid, perfected, unavoidable and senior liens held by Angelina County, Dallas County, Fort Bend County, Galveston County, Harris County,

17

Montgomery County, Tarrant County, Victoria County, Bastrop County, Bell County, Brazos County, Calhoun County Appraisal District, and Denton County, Texas, or any such liens that arise during the course of these chapter 11 cases pursuant to applicable non-bankruptcy law.

13. <u>Perfection of Adequate Protection Liens</u>. The Adequate Protection Liens granted pursuant to this Final Order shall be deemed to be legal, valid, binding, enforceable, fully and properly perfected liens, not subject to subordination, recharacterization or avoidance, for all purposes in these chapter 11 cases, and the Prepetition Secured Parties shall not be required to file or serve mortgages, Uniform Commercial Code financing statements, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by any Debtor to execute or file any documentation relating to the Adequate Protection Liens shall in no way affect the validity, perfection or priority of such Adequate Protection Liens. If, however, the Prepetition Secured Parties, in their respective sole discretion, determine to file any such mortgages, Uniform Commercial Code financing statements, notices of lien or similar instruments, or to otherwise confirm perfection of such Adequate Protection Liens, each Debtor is directed to cooperate with and assist the applicable Prepetition Secured Party in doing so, the stay imposed by section 362(a) of the Bankruptcy Code is hereby modified to allow the filing and recording in any jurisdiction of a certified copy of this Final Order or any such mortgages, Uniform Commercial Code financing statements, notices of lien or similar instruments and all such documents shall be deemed to have been filed or recorded as of the date of the Motion.

14. <u>Postpetition Interest and Fees</u>. All interest, fees and costs due and payable under the Prepetition Working Capital Loan Agreement and the Aircraft Loan Agreement, as applicable, shall continue to accrue notwithstanding the commencement of these cases; <u>provided</u>, <u>however</u>, in

the event it is subsequently determined that any of the Prepetition Secured Parties is undersecured or unsecured or its Prepetition Secured Obligations are recharacterized, subordinated, or disallowed, such party shall not be entitled to the accrual of any postpetition interest, fees and costs in accordance with this paragraph and any such interest, fees or costs that were paid pursuant to this Final Order shall be subject to recharacterization as principal, or other appropriate remedy determined by the Court.

15.    <u>Survival of Provisions of Order</u>.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any plan of reorganization in these chapter 11 cases; (b) converting these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code; (c) appointing or electing any chapter 11 trustee or any examiner; or (d) dismissing any Debtor's chapter 11 case, and the terms and provisions of this Final Order as well as the adequate protection granted pursuant to this Final Order, including but not limited to the Superpriority Claims and the Adequate Protection Liens, shall continue in full force and effect notwithstanding the entry of such order, and any adequate protection granted pursuant to this Final Order shall maintain its priority as provided by this Final Order until all of the obligations of the Debtors to the Prepetition Working Capital Secured Lender and the Aircraft Lenders (including Blue Torch), respectively, under this Final Order are indefeasibly paid.

16.    <u>Binding Effect; Successors and Assigns</u>.  The provisions of this Final Order, including all findings in this Final Order (other than as set forth in paragraph 9 of this Final Order), shall be binding upon all parties in interest in the chapter 11 cases, including without limitation, the Prepetition Secured Parties, any Committees, creditors and equity security holders and the Debtors and their respective successors and assigns (including any trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the

Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Prepetition Secured Parties and the Debtors and their respective successors and assigns.

17.     Effectiveness.  This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution of effectiveness of this Final Order.  To the extent that any finding of fact shall be determined to be a conclusion of law it shall be so deemed and vice versa.

18.     Jurisdiction.  This Court shall retain jurisdiction to enforce the terms of this Final Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Final Order.

**# # # End of Order # # #**

Order submitted by:

**DLA PIPER LLP (US)**

*/s/ Daniel Prieto*
Daniel Prieto, State Bar No. 24048744
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Tel: (214) 743-4500
Fax: (214) 743-4545
Email: dan.prieto@dlapiper.com

-and-

Thomas R. Califano (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 335-4500
Fax: (212) 335-4501
Email: thomas.califano@dlapiper.com

-and-

Daniel M. Simon (admitted *pro hac vice*)
David Avraham (admitted *pro hac vice*)
Tara Nair (admitted *pro hac vice*)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Tel: (312) 368-4000
Fax: (312) 236-7516
Email: daniel.simon@dlapiper.com
        david.avraham@dlapiper.com
        tara.nair@dlapiper.com

*Counsel for the Debtors*