Daniel B. Prieto, State Bar No. 24048744
dan.prieto@dlapiper.com
DLA Piper LLP (US)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Tel: (214) 743-4500
Fax: (214) 743-4545

*Counsel for the Debtors*

Thomas R. Califano (admitted *pro hac vice*)
thomas.califano@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 335-4500
Fax: (212) 335-4501

Daniel M. Simon (admitted *pro hac vice*)
daniel.simon@dlapiper.com
David E. Avraham (admitted *pro hac vice*)
david.avraham@dlapiper.com
Tara Nair (admitted *pro hac vice*)
tara.nair@dlapiper.com
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Tel: (312) 368-4000
Fax: (312) 236-7516

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| PHI, Inc., *et al.*,[1] | § | Case No. 19-30923-hdh11 |
| | § | |
| Debtors. | § | (Jointly Administered) |

**DEBTORS' MOTION PURSUANT TO SECTION 1127
OF THE BANKRUPTCY CODE SEEKING APPROVAL OF
MODIFICATIONS TO THE DEBTORS' CONFIRMED
THIRD AMENDED JOINT PLAN OF REORGANIZATION WITHOUT
THE NEED FOR FURTHER DISCLOSURE OR SOLICITATION OF VOTES**

The above-captioned debtors (collectively, the "Debtors"), by and through their counsel,

DLA Piper LLP (US), hereby file this motion (the "Motion") for entry of an order

(the "Proposed Order"), substantially in the form attached to this Motion as **Exhibit A**, pursuant

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PHI, Inc. (5707), PHI Air Medical, L.L.C. (4705), AM Equity Holdings, L.L.C. (0730), PHI Tech Services, Inc. (5089) and PHI Helipass, L.L.C. (4187). The corporate headquarters and the mailing address for the Debtors listed above is 2001 SE Evangeline Thruway, Lafayette, Louisiana 70508.

EAST\168555475

to section 1127 of title 11 of the United States Code (the "Bankruptcy Code"), approving certain modifications to the *Debtors' Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated June 18, 2019 (the "Plan"),[2] annexed as **Exhibit A** to the *Findings of Fact, Conclusions of Law, and Order Confirming Debtors' Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 880], entered on August 2, 2019 (the "Confirmation Order"), without the need for further disclosure or solicitation of votes. In support of this Motion, the Debtors respectfully state the following:

### PRELIMINARY STATEMENT

Throughout these chapter 11 cases, the Debtors have taken numerous steps to emerge from bankruptcy with a more sustainable balance sheet that will underpin their long-term success in the heavily competitive environment in which the Debtors operate. These steps, including their participation at mediation on May 31, 2019 led by Judge David R. Jones, culminated in the global settlements among all of the Debtors' key stakeholders. These settlements, in turn, were incorporated into the Debtors' Plan, which was confirmed by this Court on July 31, 2019. The Plan accomplishes many of the goals initially set forth by the Debtors in connection with the commencement of these cases, including without limitation, (i) a reduction of debt of approximately $475 million, resulting in a substantial de-levering of the Debtors' balance sheet, (ii) a new-money infusion from the Debtors' unsecured creditors to provide $75 million of cash on the Reorganized Debtors' balance sheet as of the Effective Date; and (iii) a right-sizing of the Debtors' aircraft fleet, and modification of certain leases which is anticipated to result in approximately $12 million of annual run-rate lease savings. Accordingly, the Debtors believe that they are well positioned to emerge from bankruptcy as a healthy and profitable enterprise.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

The Debtors also believe that their prospects for success in the future are enhanced by no longer operating as a public company but rather to emerge from these chapter 11 cases as a private company not subject to the statutory reporting requirements and supervision of the U.S. Securities and Exchange Commission and NASDAQ exchange. The Debtors believe that doing so is expected to result in substantial savings for the Reorganized Debtors by avoiding compliance and reporting costs. The current Plan as drafted, however, could result in the Debtors remaining publicly-traded because too many persons or non-accredited investors may receive equity securities under the Plan as a result of the warrants to be issued to existing stock holders. To remedy this problem, the Debtors have worked closely with the Creditors' Committee and, as a result, have developed minor modifications to the Plan designed to reduce the ultimate number of equity security holders following the Effective Date. Specifically, the proposed modifications provide that current shareholders that hold less than 250 shares of the Debtors' stock[3] will receive cash in an amount equal to the value of the Old Equity Settlement Warrants that they would have received under the Plan. Shareholders that hold 250 shares or more will still receive the Old Equity Settlement Warrants. This modification will reduce the number of holders of the Old Equity Settlement Warrants from approximately 860 to approximately 120, permitting the Reorganized Debtors to emerge as a private company.

The proposed Plan modifications are appropriate under section 1127 of the Bankruptcy Code. They will not reduce the value that current shareholders will receive under the Plan. Thus, there is no material or adverse impact on current shareholders and no need for further disclosures or resolicitation of their votes on the Plan. What's more, even if the Debtors were to resolicit votes from those shareholders impacted by these modifications, it would not impact the

---

[3] Shortly following the commencement of these cases, the Debtors stock was de-listed from NASDAQ, and currently trades on the Pink Market under the ticker symbol "PHIIQ". As of the filing of this Motion, the trading price of the Debtors' stock is $0.60.

balloting results, as Class 10 (Existing PHI Interests) would still vote to accept the Plan. By permitting the Reorganized Debtors to avoid the significant costs and burdens associated with compliance with public reporting requirements, these proposed changes to the Plan provide a substantial benefit to creditors and shareholders that will be holding the debt and equity of the Reorganized Debtors after the Effective Date. Accordingly, the Debtors respectfully request that the Court enter an order approving the modifications to the Plan under section 1127(b) of the Bankruptcy Code and providing that the Confirmation Order applies to the Plan, as modified.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over the Debtors, their estates, and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2. Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested in this Motion are sections 1127(b) and (c) of Bankruptcy Code.

## BACKGROUND

4. On March 14, 2019, each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

5. On March 25, 2019, the Office of the United States Trustee for the Northern District of Texas (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee") under section 1102(a)(1) of the Bankruptcy Code [Docket No. 129]. On April 25, 2019, the U.S. Trustee appointed the official committee of equity

security holders (the "Equity Committee") in these chapter 11 cases [Docket No. 345]. No trustee or examiner has been appointed in the Debtors' chapter 11 cases.

6. On May 31, 2019, the Debtors, the Creditors' Committee, the Unsecured Notes Indenture Trustee, Thirty Two, and the Equity Committee participated in a full-day mediation with the Honorable David R. Jones of the Bankruptcy Court of the Southern District of Texas. The mediation ultimately led to an agreement among the Debtors, Thirty Two, Mr. Al A. Gonsoulin, the Creditors' Committee, the Unsecured Notes Indenture Trustee, and Houlihan Lokey reflected in that certain settlement stipulation [Docket No. 624] and appended term sheet (the "Settlement Term Sheet"). The Settlement Term Sheet sets out the negotiated terms of the comprehensive restructuring transaction reflected in the Plan.

7. In addition, the Debtors, the Creditors' Committee and the Equity Committee engaged in further discussions to resolve the pending objections by the Equity Committee. To that end, on June 18, 2019, the parties submitted the *Stipulation Among Debtors and Equity Committee Regarding Matters to be Resolved Pursuant to Bankruptcy Rule 9019* [Docket No. 686] (the "Equity Committee Settlement Stipulation"), which incorporates a term sheet negotiated among the parties. Like the Settlement Term Sheet, the Equity Committee Settlement Stipulation was incorporated into the Plan.

8. On June 18, 2019, the Debtors filed the Plan and the *Disclosure Statement for the Debtors' Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 688] (as it was further amended, modified, or supplemented from time to time, the "Disclosure Statement"). On June 24, 2019, the Court entered an order [Docket No. 718] approving the Disclosure Statement.

9. The Plan has been accepted by all impaired classes of claims and interests entitled to vote in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code. See D.I. 878. On August 2, 2019, this Court entered the Confirmation Order confirming the Plan.

**THE PROPOSED MODIFICATIONS**

10. The proposed modifications to the Plan (collectively, the "Modifications"), a copy of which are attached hereto as **Exhibit B**,[4] reflect changes to the Plan that are designed to reduce the total number of persons that will hold equity securities of the Reorganized Debtors as a result of distributions under the Plan. As explained below, these changes are necessary to ensure that the Reorganized Debtors will not have to register as a public company following the Effective Date. The following is a side-by-side comparison of the treatment of Existing PHI Interests under the current Plan and the proposed Modifications.[5]

---

[4] Contemporaneously herewith, the Debtors filed the *Debtors' Modified Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, which incorporates these proposed modifications.

[5] The Debtors are currently in discussions with the Equity Committee regarding the Modifications, including the amount of Cash per share that would be paid to holders of fewer than 250 shares of Existing PHI Interests under the Plan, as modified. The Debtors reserve the right to further modify the Plan prior to the hearing on this Motion.

|  | **Original Plan Treatment** | **Modified Plan Treatment** |
|---|---|---|
| **Existing PHI Interests** | Class 10 Existing PHI Interests will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and, pursuant to the Equity Committee Settlement Stipulation, each holder of an Allowed Class 10 Interest (other than Mr. Al A. Gonsoulin and his Affiliates, who shall be deemed to have waived any entitlement or distribution on account of any and all Existing PHI Interests held or owned as of the Effective Date) shall receive (i) if Classes 4 and 5 vote in favor of the Plan its Pro Rata share of Old Equity Settlement Warrants, as more fully described in Article IV.D.6 of the Plan; or (ii) if Classes 4 and 5 vote to reject the Plan, no distribution | Class 10 Existing PHI Interests will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and, pursuant to the Equity Committee Settlement Stipulation, each holder of an Allowed Class 10 Interest (other than Mr. Al A. Gonsoulin and his Affiliates, who shall be deemed to have waived any entitlement or distribution on account of any and all Existing PHI Interests held or owned as of the Effective Date) shall receive (i) if ~~Classes 4 and 5 vote in favor of the Plan~~ such holder holds fewer than 250 shares of Existing PHI Interests, Cash in an amount equal to at least $0.09 per share, as determined by the Debtors, with the consent of the Creditors' Committee, under a Black-Scholes calculation of the value of an Old Equity Settlement Warrant, or (ii) if such holder holds 250 share or more of Existing PHI Interests, its Pro Rata share of Old Equity Settlement Warrants, as more fully described in Article IV.D.6 of the Plan~~; or (ii) if Classes 4 and 5 vote to reject the Plan, no distribution~~. |

## RELIEF REQUESTED

11.     By this Motion, the Debtors seek entry of the Proposed Order, pursuant to section 1127(b) of the Bankruptcy Code, authorizing the Modifications to the Plan and determining that the Modifications are proper without further disclosure or resolicitation of votes under sections 1127(c) or 1127(d) of the Bankruptcy Code.

## THE PROPOSED MODIFICATIONS SHOULD BE APPROVED

12.     The Modifications will allow the Reorganized Debtors to emerge from these chapter 11 cases as a private company without further delay while not materially altering the

treatment of Existing PHI Interests, the only Plan class impacted by the Modifications. The Plan provides:

> [A]fter the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan, in each case in a manner consistent with the Settlement Stipulation and otherwise reasonably acceptable to the Creditors' Committee, and, to the extent it remains in full force and effect, in a manner consistent with the Equity Committee Settlement Stipulation.

(Plan § XIV.A.)

13. Section 1127 of the Bankruptcy Code, in relevant part, provides:

> (b) The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.
>
> (c) The proponent of a modification shall comply with section 1125 of this title with respect to the plan as modified.
>
> (d) Any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection.

11 U.S.C. §1127. As described in more detail below, the proposed Modifications satisfy section 1127(b) because the circumstances warrant the modifications and the Plan, as modified, meets the requirements of sections 1122, 1123 and 1129 of the Bankruptcy Code.

14. The Debtors have determined that it is in the best interest of their estates, creditors and other parties in interest to emerge from these chapter 11 cases as a private company. This

will permit the Reorganized Debtors to, among other things, avoid the significant costs and burdens associated with complying with public reporting requirements. A potential impediment to achieving this objective, however, is that the Plan currently provides that all of the numerous holders of Existing PHI Interests (except for Mr. Al. A. Gonsoulin and his affiliates) will receive Old Equity Settlement Warrants.

15. Under the federal securities laws, a U.S. company is subject to public reporting obligations if, among other things, it lists securities on an exchange or issues a class of equity securities held of record by either 2,000 persons or 500 non-accredited investors (subject to certain limited exceptions not applicable to the Debtors). 17 CFR § 240.12g-1. Pursuant to the Plan, the Reorganized Debtors will issue the following equity securities: (i) New Common Stock; (ii) New Warrants; and (iii) Old Equity Settlement Warrants. The Debtors believe that the total number of holders of the New Common Stock and the New Warrants will be well below the applicable Securities and Exchange Commission (the "SEC") thresholds. If the Reorganized Debtors issue the Old Equity Settlement Warrants to each holder of the Existing PHI Interests, however, the total number of persons holding equity securities likely will exceed the applicable limits. At a minimum, because the Debtors do not currently have information on the sophistication of their current shareholders, the Debtors would need to gather information about them on a periodic basis to determine if there would be less than 500 non-accredited holders, which would dictate whether the Reorganized Debtors would be required to register as a public company following the Effective Date.

16. In an effort to maximize value for all constituents, the Debtors, following extensive discussions with, and consent of, the Creditors' Committee, propose to modify the Plan to ensure that the Debtors will emerge from these chapter 11 cases as a private company. The

Modifications will result in holders of the Existing PHI Interests obtaining the same or better economic treatment as compared to the current Plan. In particular, depending on how many shares they hold, holders of Existing PHI Interests will either receive the Old Equity Settlement Warrants or the value of such warrants in cash based on the widely used Black Scholes-Merton model for pricing options. The Debtors will be prepared to proffer supporting testimony at the hearing scheduled on this Motion. In addition, the Modifications will enhance the Debtors' value by permitting them to avoid the material costs and burdens of being a public reporting company.

17. Furthermore, after the Effective Date, the Debtors could achieve the same result as the Modifications by taking corporate action under applicable law. In particular, the Debtors could reduce the number of holders of their equity securities in the same or similar manner as proposed by the Modifications by engaging in a reverse stock split. Indeed, a reverse stock split could result in a "cash out" of certain holders of Old Equity Settlement Warrants and at the same or similar price as under the proposed Modifications. The proposed modifications to the Plan, however, are a far more efficient way to proceed because they will permit the Reorganized Debtors to avoid the costs and delay associated with a reverse stock split while, at the same time, ensuring that the Debtors can emerge immediately following the Effective Date as a private company.

18. Additionally, section 1127(b) is further satisfied because the Modifications do not affect the classification or treatment of claims or interests and thus do not implicate this Court's previous ruling that the Plan satisfies the requirements of section 1122, 1223 and 1129 of the Bankruptcy Code. Significantly, as discussed more fully below, the Modifications will not materially alter the treatment to be received by the holders of Existing PHI Interests in Class 10,

the only Class that could be impacted by the Modifications. It should be noted that, of the approximately 860 holders of Existing PHI Interests, approximately 42% hold only ten shares of stock or fewer. Furthermore, the total number of shares of Existing PHI Interests that will be impacted by the Modifications is approximately 20,000 shares, which represent only approximately 0.15% of the total number of shares. Thus, even if each of those holders impacted by the Modifications were to automatically be deemed to reject the Plan, the Class 10 (Existing PHI Interests) would still accept the Plan under section 1126(d) of the Bankruptcy Code.

19. Finally, the Modifications are entirely consistent with the Equity Committee Settlement Stipulation. As an initial matter, the Equity Committee Settlement Stipulation left open the possibility that the treatment of Existing PHI Interests could be modified if the issuance of the Old Equity Settlement Warrants would cause the Reorganized Debtors to incur additional costs or to be subject to additional restrictions. Specifically, the term sheet attached as **Exhibit A** to the Equity Committee Settlement Stipulation provides that the warrants "shall be freely tradable (whether the Reorganized Debtors' equity is publicly listed or not) pursuant to section 1145 of the Bankruptcy Code, *provided that such agreement shall not result in additional costs or restrictions on the Reorganized Debtors*." (emphasis added.) As discussed above, issuance of the Old Equity Settlement Warrants under the Plan to all current holders of Existing PHI Interests could require the Reorganized Debtors to register as a public company. This would indisputably cause the Reorganized Debtors to incur additional costs to comply with public reporting requirements and to be subject to additional restrictions applicable to public companies. The Modifications will eliminate these potential costs and restrictions by permitting the Reorganized Debtors to emerge as a private company. Furthermore, the Modifications do not reduce the value that holders of Existing PHI Interests will receive under the Plan. Rather,

certain holders of Existing PHI Interests (*i.e.*, those holding 249 or less of shares of Existing PHI Interests) will simply receive the cash value of the Equity Settlement Warrants that they would have been entitled to receive under the current Plan.

20. Accordingly, the Modifications should be approved.

**THE PROPOSED MODIFICATIONS DO NOT REQUIRE FURTHER DISCLOSURE OR RESOLICITATION**

21. As noted above, section 1127(c) of the Bankruptcy Code requires that any proposed modification to a plan must comply with, among other things, the disclosure requirements of section 1125 of the Bankruptcy Code. The legislative history of section 1127(c) makes clear that not all modifications to a confirmed plan require new disclosure. See H. Rep. No. 595, 95th Cong., 1st Sess., 411 (1977) ("[I]f the modification were sufficiently minor, the court might determine that additional disclosure was not required under the circumstances"). A number of courts, including this Court, have held that further disclosure and resolicitation of votes on a modified plan is required only when the modification materially and adversely impacts parties who previously voted for the plan. *See, e.g.*, *In re 4 West Holdings, Inc.*, 593 B.R. 448, 459 (Banker. N.D. Tex. 2018) ("a creditor's prior acceptance of a plan will be deemed an acceptance of the modified plan if the modification does not 'materially and adversely change" the treatment of the creditor's claim.") (citations omitted); *In re Aleris Int'l, Inc.*, 2010 WL 3492664, at \*32 (Bankr. D. Del. May 13, 2010) ("Further disclosure and resolicitation of votes on a modified plan is only required . . . when the modification materially *and* adversely affects parties who previously voted for the plan.") (citations omitted) (emphasis in original); *In re Federal-Mogul Global Inc.*, 2007 Bankr LEXIS 3940, \*113 (Bankr. D. Del. 2007) (additional disclosure under section 1125 is not required where plan "modifications do not materially and adversely affect or change the treatment of any Claim against or Equity Interest in any Debtor.");

*Beal Bank, S.S.B. v. Jack's Marine, Inc. (In re Beal Bank, S.S.B.)*, 201 B.R. 376, 380 n.4 (E.D. Pa. 1996) (further disclosure and solicitation not required under sections 1127(b) and (c) where modification to plan is immaterial); *In re Century Glove, Inc.*, 1993 U.S. Dist. LEXIS 2286, *12 (D. Del. Feb. 10, 1993) (upholding bankruptcy court's finding that section 1127 did not require further disclosure and resolicitation of votes on plan modification that altered the treatment to only one creditor when "the modifications at issue did not materially and adversely impact any creditors who voted for the Plan"); *In re Am. Solar King Corp.*, 90 B.R. 808, 823-24 (Bankr. W.D. Tex. 1988) ("Further disclosure occurs only when and to the extent that the debtor intends to solicit votes from previously dissenting creditors or when the modification materially and adversely impacts parties who previously voted for the plan."); *see also In re Temple Zion*, 125 B.R. 910, 914 (Bankr. E.D. Pa. 1991) (further disclosure pursuant to section 1125 is unnecessary where post-confirmation plan modification under section 1127(b) affected distribution to only one creditor, but did not affect any allegedly impaired class).

22. The *American Solar King* court explained the logic behind not requiring disclosure and resolicitation of a plan modification where such modification is not material:

> Ballots solicited with the original disclosure statement previously approved by the court will still be valid for the modified plan, because that disclosure statement is presumed already to contain "adequate information" to cover minor modifications. "Adequate information" is a term of art, defined by Section 1125 to be that disclosure necessary for a reasonable investor to make an informed judgment on whether to vote for a given plan. 11 U.S.C. § 1125(a)(1). A modification which is not "material" is by definition one which will not affect an investor's voting decision. Additional disclosure would serve no purpose and would therefore not be required.

*Am. Solar King*, 90 B.R. at 824, n. 28 (internal citations omitted).

23. The proposed Modifications are not material. "A modification is material if it so affects a creditor or interest holder who accepted the plan that such entity, if it knew of the modification, would be likely to reconsider its acceptance." *Am. Solar King*, 90 B.R. at 824

(internal citation omitted). In *American Solar King*, the court held that an amendment to a plan to increase the distribution of stock in the reorganized company to one creditor such that other creditors' recoveries would be diluted by less than one percent as a result of the modification to "be so small" so as to be immaterial. Id. Similarly, in *Beal Bank, S.S.B. v. Jack's Marine, Inc. (In re Beal Bank, S.S.B.)*, the court held that a modification to a plan after confirmation to extend by 60 days the date on which a creditor would receive payment did not require further disclosure or solicitation "given the immaterial nature of the modification." 201 B.R. 376, 380 (E.D. Pa. 1996).[6] The Debtors submit that the Modifications are immaterial. The proposed Modifications do not reduce the value that holders of Existing PHI Interests will receive under the Plan. While some holders of Existing PHI Interests will receive cash rather than the Old Equity Settlement Warrants, the cash they will receive under the Plan is at least equal to the value of the Old Equity Settlement Warrants.

24. Furthermore, the proposed Modifications to the Plan are not adverse to any holder of Existing PHI Interests or any creditors. Courts have held that proposed plan modifications are not adverse where "[n]one of the changes negatively affects the repayment of creditors." *See, e.g., In re Mount Vernon Plaza Community Urban Redevelopment Corp. I*, 79 B.R. 305, 306 (Bankr. S.D. Ohio 1987); *see also Am. Solar King*, 90 B.R. at 823, n. 27 ("The modified plan need not be resubmitted to creditors and interest holders if the court finds that they are not

---

[6] Rule 3019 of the Federal Rules of Bankruptcy Procedure by its terms applies only to modifications of a chapter 11 plan before confirmation and is, therefore, not applicable in these circumstances. Nevertheless, it provides guidance on when resolicitation may or may not be warranted. Bankruptcy Rule 3019 provides that a modification that "does not adversely change the treatment of the claim of any creditor shall be deemed accepted by all creditors ... who have previously accepted the plan." The 1993 Advisory Committee Note to Rule 3019 explains that "the rule makes clear that a modification may be made, after acceptance of the plan without submission to creditors and equity security holders if their interests are not affected." Fed. R. Bankr. 3019 advisory committee's note (1993). In this case, since the proposed Modifications are minor and do not adversely affect the interests of creditors or equity security holders, each creditor and equity security holder that accepted the original Plan should be deemed to accept the Plan, as modified by the Modifications, without the option to change its previous vote. *See In re 4 West Holdings, Inc.,* 593 B.R. at 448.

adversely affected.") (internal citations omitted). In this case, holders of Existing PHI Interests are not adversely affected by the proposed Modifications. As discussed above, the value that holders of Existing PHI Interests will receive under the Plan is not reduced by the Modifications; rather, such holders receive cash rather than a highly speculative and likely illiquid warrant. The proposed Modifications will continue to allow the holders of Existing PHI Interests to obtain the same economic benefits under the Plan while permitting the Reorganized Debtors to avoid the burdens and costs associated with being a public company. In addition, the Modifications do not impact distributions to creditors.

25. Therefore, because the proposed Modifications to the Plan are neither material nor adverse, the Debtors submit that they need not provide further disclosure in respect thereof or resolicit the votes of any parties in interest, including the holders of Existing PHI Interests.

**NOTICE**

26. Notice of this Motion shall be provided to: (a) the U.S. Trustee; (b) the Office of the Attorney General of the states in which the Debtors operate; (c) the U.S. Attorney's Office; (d) counsel to Blue Torch Capital LP; (e) counsel to the Creditors' Committee; (f) counsel to the Equity Committee; (g) counsel to Delaware Trust Company; (h) counsel to Thirty Two, L.L.C.; (i) the Internal Revenue Service; (j) holders of less than 250 Existing PHI Interests or their nominees; (k) the SEC; (l) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (m) any other party in interest entitled to notice of this Motion. The Debtors respectfully submit that such notice is sufficient and that no further notice of this Motion is required.

*[Remainder of This Page Intentionally Left Blank]*

**WHEREFORE**, for the reasons set forth herein, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief to the Debtors as is just and proper.

Dated: August 9, 2019
Dallas, Texas

**DLA PIPER LLP (US)**
*/s/ Daniel Prieto*
Daniel Prieto, State Bar No. 24048744
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Tel: (214) 743-4500
Fax: (214) 743-4545
Email: dan.prieto@dlapiper.com

-and-

Thomas R. Califano (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 335-4500
Fax: (212) 335-4501
Email: thomas.califano@dlapiper.com

-and-

Daniel M. Simon (admitted *pro hac vice*)
David Avraham (admitted *pro hac vice*)
Tara Nair (admitted *pro hac vice*)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Tel: (312) 368-4000
Fax: (312) 236-7516
Email: daniel.simon@dlapiper.com
david.avraham@dlapiper.com
tara.nair@dlapiper.com

*Counsel for the Debtors*